UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------x
ATIBA TUCKER,
                              :
            Plaintiff,              REPORT & RECOMMENDATION
                              :
      -against-                     08 Civ. 4753 (VM)(MHD)
                              :
THE CITY OF NEW YORK et al.,
                              :
            Defendants.
----------------------------x

TO THE HONORABLE VICTOR MARRERO, U.S.D.J.:


      Plaintiff Atiba Tucker commenced this lawsuit in mid-2008
against the City of New York, a City police officer and sergeant,
and various officer John Doe and supervisory Richard Roe
defendants. In his pleading he complained about the circumstances
of his arrest and asserted claims for, among other things, false
arrest and the use of excessive force in handcuffing him. Invoking
42 U.S.C. § 1983, he asserted a variety of federal claims,
principally under the Fourth Amendment, as well as state-law
claims, and sought compensatory and punitive damages.


      On March 4, 2009 plaintiff accepted an offer of judgment
previously served by defendant City of New York, which proposed a
payment of $3,501.00 plus "reasonable attorneys' fees, expenses and
costs". (R. 68 Offer of Judgment dated Feb. 18, 2009). The parties

1

subsequently attempted unsuccessfully to resolve the amount of the fee, expense and cost award. Having failed in that effort, they have resorted to motion practice.

In plaintiff's initial papers, he seeks an award of $35,920.28 in fees for the work principally of two lawyers, plus an additional $849.03 in expenses. In plaintiff's reply papers he asks for an additional $3,168.75 in fees to cover the work embodied in that submission. In short, plaintiff seeks nearly $40,000.00 in fees and expenses. Defendant opposes, contending that plaintiff's attorneys are substantially overbilling their hours, are seeking highly inflated hourly rates, are requesting fees for work that is not subject to a fee award, are only marginally competent and should be limited to an award of no more than $5,000.00 in fees and costs for what defendant considers to be at best a weak case and result.

For the reasons that follow, we recommend that plaintiff be awarded $21,392.50 in fees and $849.03 in costs and expenses.

Prior Proceedings

One of plaintiff's two attorneys of record, David B. Rankin, Esq., received this case pre-suit as a referral from another

2

attorney in or about August 2007. He then persuaded a more
experienced lawyer, Jeffrey A. Rothman, Esq., to work with him on
the case. The basis for the intended lawsuit was the arrest of
their client, Mr. Tucker, while he was on the rear porch of a
single-family house in the Bronx. Mr. Tucker claimed that he had
been found on private property because he had fled from two car-
jackers, badly breaking his wrist in the process, and that he was
seeking assistance in summoning the police and avoiding his armed
attackers. The residents of the house called the police after
Tucker began banging on the back door, breaking a glass door pane
in the process. According to Mr. Tucker, there was no basis for the
arrest. Moreover, he asserted that in view of the severe pain that
he was experiencing from his broken wrist -- which subsequently
required surgery -- it was unreasonable for the police to insist on
rear-cuffing him when transporting him in a patrol car to the
precinct, a condition so painful that he fainted once he arrived at
the precinct. (Compl. at ¶¶ 12-30).

   Mr. Tucker was charged with two counts of burglary and with
criminal trespass and criminal mischief. The District Attorney
later dismissed the burglary charges, and Tucker subsequently
received an Adjournment in Contemplation of Dismissal on the other
charges, paying $300.00 and a five-percent surcharge. (Id. ¶¶ 31-

3

35).

Before commencing suit in this court, counsel filed an application in the New York State Supreme Court under Gen. Mun. L. § 50-e(5) for leave to file a notice of claim out of time with the City.[1] The state court granted the petition, Mr. Tucker filed the notice, and the City conducted a so-called section 50-h hearing, which involved an examination under oath of plaintiff. (Compl. at ¶¶ 6-7; Decl. of Jeffrey A. Rothman, Esq. in Supp. of Mot. for Att'ys' Fees and Other Discretionary Costs, executed Apr. 30, 2009, ¶ 12).

Plaintiff filed his twelve-claim complaint in this court on May 21, 2008.[2] Following an initial conference, the court ordered

---

[1] The General Municipal Law requires the filing of such a notice of claim as a predicate to asserting state-law claims against the City. N.Y. Gen. Mun. L. § 50-i.

[2] The reference to twelve claims actually understates the number of separate legal theories asserted by plaintiff. In his pleading he asserted a single claim under section 1983 for violation of his constitutional rights by virtue of a false arrest, malicious prosecution, abuse of process, assault and battery, denial of equal protection and substantive due process, denial of a "fair trial", failure to provide medical care, infliction of emotional distress and "failing to intercede on behalf of plaintiff". (Compl. at ¶¶ 37-38). The remaining eleven claims were for supervisory liability under section 1983; municipal liability for constitutional violations; respondeat superior liability of the City for state-law violations; assault

4

that discovery be completed by February 28, 2009. (Case Management Order dated Oct. 31, 2008 at ¶ 5). As a result of the District Court's concurrent reference of the case to me for general pretrial supervision, we scheduled a conference for November 21, 2008. The parties finally exchanged initial disclosures in mid-November 2008, and at the conference on November 21 they requested that we conduct a settlement conference. We acquiesced and set such a conference for January 8, 2009. (Order dated Nov. 21, 2008). On the same day -- November 21 -- plaintiff served three sets of document requests and interrogatories -- one set for each defendant -- on defendants' counsel. (Decl. of Mark D. Zuckerman, Esq., executed May 11, 2009, Ex. B). Because of later developments, however, defendants never served responses, and the parties undertook no other discovery. (See Rothman Decl. at ¶ 17).

In January the settlement conference was adjourned to February 17, 2009 at the request of defendants' counsel. (Order dated Jan. 14, 2009). We also agreed to a request by the parties to adjourn without date the deadlines for discovery and other pretrial steps

_____

and battery; false arrest and false imprisonment; abuse of process; malicious prosecution; intentional and negligent infliction of emotional distress; denial of equal protection (apparently under state law); negligence and (finally) "negligent hiring, screening, retention, supervision and training." (Id. at ¶¶ 40-73).

pending the settlement conference. (Endorsed Order dated Jan. 16, 2009).

We conducted the conference on February 17. Although the discussions did not yield agreement at that time, on the next day defendant City of New York served its offer of judgment, and plaintiff accepted it on March 4, 2009.[3] Judgment incorporating the terms of the offer was entered on March 6, 2009, and the parties thereafter engaged in settlement discussions concerning fees and expenses, a process that included a settlement conference with the court on April 10, 2009.

Since the parties were unable to bridge their differences on fees, plaintiff filed his application for an award on May 1, 2009. The defendant filed opposition papers, and plaintiff has filed a reply.

The Current Application

The plaintiff's fee application seeks an award for

---

[3] In the wake of that conference but prior to the service of the offer of judgment, we set a new discovery schedule, which contemplated the completion of fact discovery by May 31, 2009 and expert discovery by July 31, 2009. (Order dated Feb. 17, 2009).

approximately 110 hours of attorney time attributable almost entirely to Messrs. Rothman and Rankin.[4] Mr. Rothman seeks to be compensated at a rate of $325.00 for his work in 2007 and 2008, and at a clip of $400.00 per hour for his time spent in 2009. Mr. Rankin seeks an award based on an hourly rate of $325.00 for all of his time. (Rothman Decl. at ¶ 24 & Ex. 4; Rankin Decl., Exs. 2-3).

As for the amount of time claimed, we start with Mr. Rothman, who proffers time summaries that start on December 5, 2007 and end on April 30, 2009. (Rothman Decl., Ex. 4). The time entries for 2007 and 2008 total 37.4 hours and encompass the state-court late-notice-of-claim application, many communications with either co-counsel or "colleagues", research on several legal issues, representation of Tucker at the 50-h hearing, editing of the complaint, preparation for and service of process, preparation for and attendance at the initial conferences, "investigation" with co-counsel of the scene of the arrest and drafting of plaintiff's discovery requests. (Rothman Decl., Ex. 4 at first to third pages).

_____

[4] The only exceptions are claims for 1.2 hours of work performed by another attorney, Mr. Rankin's now-partner Mark M. Taylor, Esq., at a rate of $250.00 an hour, and 2.7 hours of time spent by a Ms. Kim Wong, described as an "assistant", who we infer was a clerk and was billed at a rate of $100.00 an hour. (Rothman Decl. at ¶ 24; Decl. of David B. Rankin, Esq., in Supp. of Mot. for Att'ys' Fees and Other Discretionary Costs, executed Apr. 30, 2009, Ex. 2 at p. 5).

The next set of time entries, encompassing 6.7 hours, ran from January 3 to February 18, 2009 (the date of service of the offer of judgment) and involved preparation for the settlement conference, as well as participation in the conference and contact with the client about the offer of judgment. (<u>Id.</u>, Ex. 4 at third page). The remaining documented time, totaling 16.3 hours, involved work accepting the offer, addressing the fee issue with adversary counsel, participating in the fee settlement conference, contacting other attorneys for declarations about the governing local practices on hourly rates for single practitioners, and preparation of a portion of the fee application. (<u>Id.</u>, Ex. 4 at third to fourth pages).

In short, in Rothman's portion of the application, he documents 60.4 hours of attorney time, at hourly rates of $325.00 and $400.00, yielding total fees for his work before preparation of the reply papers, of $12,155.00 for 2007 and 2008, and $9,200.00 for 2009. (Rothman Decl. at ¶ 24). He also adds in his reply declaration a demand for an additional $2,600.00, reflecting 6.5 hours of work on the reply papers at $400.00 per hour. (Supplemental Decl. of Jeffrey A. Rothman, Esq., in Supp. of Mot. for Att'ys' Fees and Other Discretionary Costs, executed May 15, 2009, ¶ 14).

8

As for Mr. Rankin, the time records that he submits with his initial declaration run from August 20, 2007 through April 30, 2009. (Rankin Decl., Exs. 2-3). In all, he lists 40.45 hours of time that he spent through the filing of the fee motion. (Rothman Decl. at ¶ 24; Rankin Decl., Ex. 2 at p. 5 & Ex. 3). Although some of Mr. Rankin's entries are opaque and lacking in detail, they cover numerous communications by him with other attorneys (including the referring attorney, his co-counsel and other unidentified lawyers) and with an employee of his firm (Ms. Wong), many letters regarding medical records, conferences with and letters to his client, review of records and time spent copying them for his co-counsel, drafting the complaint, conferring with Rothman about his edits on the pleading, filing the complaint, consideration of issues regarding service of the complaint, Bates-stamping of documents, going with his co-counsel to the site of the arrest, continuing unexplained communications with "other outside counsel", copying of the pleadings, involvement in initial disclosures, participation in the November 2008 status conference, preparation for and participation in the settlement conference, preparation for and attendance at the fee settlement conference, and preparation of a portion of the fee motion. (Rankin Decl., Exs. 2-3). In a reply declaration, Rankin asserts that he spent 1.75 additional hours in its preparation. (Second Decl. of David B.

Rankin, Esq., in Supp. of Mot. for Att'ys' Fees and Other
Discretionary Costs, executed May 15, 2009, ¶ 14).

Apart from these requests, Mr. Rankin seeks an award of
$570.00 for 1.2 hours of work by Mr. Taylor and 2.7 hours of work
by Ms. Wong. (Rothman Decl. at ¶ 24; Rankin Decl., Ex. 2 at p. 5).
In addition, Messrs. Rothman and Rankin document the expenditure of
$849.03 in costs, attributable to the federal court filing fee
($350.00), the copying of medical records ($91.58), the state-court
filing fees ($350.00), the copying of state-court papers for
service on the individual defendants ($4.77), postage for mailings
to the individual defendants ($2.68), and the cost of a car service
to travel to the location of the arrest ($50.00). (Rothman Decl.,
Ex. 4 at fourth page); Rankin Decl., Ex. 2 at p. 5).

ANALYSIS

There is no dispute that plaintiff is a prevailing party for
purposes of eligibility for a fee and expense award under 42 U.S.C.
§ 1988. Measurement of a fee award turns on our assessment of a
"presumptively reasonable fee", Arbor Hill Concerned Citizens
Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir.
2008), an exercise that largely tracks the traditional "lodestar"

analysis. Although the term "lodestar" is now disfavored by the Second Circuit, see, e.g., id. at 188-90, the applicable approach still contemplates (1) a consideration of the number of hours actually spent by counsel and other personnel that are deemed reasonably necessary to the successful outcome for the client and (2) the setting of reasonable hourly rates for counsel, a criterion most recently, if opaquely, described as "the rate a paying client would be willing to pay." Id. at 190.

In determining how much attorney time should be compensated, the court looks initially to the amount of time spent on each category of tasks, as reflected in contemporaneous time records, e.g., Malletier v. Dooney & Bourke, Inc., 2007 WL 1284013, *1 (S.D.N.Y. Apr. 24, 2007) (citing New York Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1142-43, 1147 (2d Cir. 1983)), and then decides how much of that time was "reasonably expended." Id. (internal quotations omitted). To do so "the court looks to its own familiarity with the case and . . . its experience generally as well as to the evidentiary submissions and arguments of the parties." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (internal quotations omitted). If the court finds that some of the time was not reasonably necessary to the outcome, it should reduce the time for which compensation is awarded. E.g., Hensley v.

11

Eckerhart, 461 U.S. 424, 433-37 (1983); Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998). Such reductions are appropriate not only for work on unsuccessful claims and arguments, but also for inefficient or duplicative work. E.g., Hensley, 424 U.S. at 434-35; In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987). "In reducing a claim for time spent, the court may 'use a percentage deduction "as a practical means of trimming fat from a fee application."'" Malletier, 2007 WL 1284013, at *1 (quoting McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006) (quoting Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998))).

As for the appropriate hourly rates for attorneys and other legal personnel, the traditional rule has required the court to look to rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); see also McDonald, 450 F.3d at 96. Recently, however, the Second Circuit has suggested that the court engage in a somewhat broader and more variegated analysis, under which it not only looks to the community-based measure of rates, but also takes into consideration a broader array of factors, first proposed by the Fifth Circuit in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), in order to

12

arrive at a "presumptively reasonable fee." Arbor Hill, 522 F.3d at 188-90.[5] As noted, according to Arbor Hill the aim is to arrive at a rate that "a paying client would be willing to pay", with the court expected to "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Id. at 190. Accord Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009).

Applying these criteria to the current application, we start with the amount of attorney time for which plaintiff seeks compensation. There are several significant problems with that aspect of the motion.

---

[5] The court in Johnson invoked a series of twelve considerations to influence the measurement of a fee, including:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186-87 n.3 (citing Johnson, 488 F.2d at 717-19).

There is nothing inherently wrong with using two or more attorneys to handle a lawsuit if its scope suggests that such staffing is appropriate. See, e.g., Raniola v. Bratton, 2003 WL 1907865, *5 (S.D.N.Y. Apr. 21, 2003); Bridges v. Eastman Kodak Co., 1996 WL 47304, *6 (S.D.N.Y. Feb. 6, 1996), aff'd, 102 F.3d 56 (2d Cir. 1996). Nonetheless, using multiple attorneys in a simple case, which this certainly was, poses the serious potential -- fully realized in this instance -- for duplication of work or overstaffing. A reasonably experienced attorney handling Tucker's lawsuit should have required little, if any, consultation with other counsel to undertake the steps needed in the litigation. These steps included an initial client consultation, acquisition of medical documents from plaintiff and treating sources (and possibly arrest documents), the drafting of a straightforward and fairly brief complaint, its service on the City and the individual defendants, the preparation of initial disclosures (which in this case appear to have required only minimal work), the drafting of a set of quite standard document requests and interrogatories, attendance at two scheduling conferences, settlement discussions, conferral with the client about the offer of judgment, settlement discussions with defendants' counsel concerning the fee issue, attendance at the fee settlement conference, the preparation of a fee application, the review of defendants' response and the

14

preparation of a reply. Given the fairly straightforward nature of the case -- exemplified by the spare allegations of fact in the otherwise bloated complaint (Compl. at ¶¶ 12-35) -- and the absence of any significant discovery or motion practice other than the fee application, accomplishing these tasks should hardly have consumed the approximately 110 hours dedicated to the case by counsel.

Apart from the general excessiveness of the time claimed by the attorneys, our review of their time records reveals the source of some of this excess. Mr. Rankin's records especially reflect a vast number of communications with others, mainly other attorneys, with no little or no explanation of the subject of the communications, much less their necessity. (E.g., Rankin Decl., Ex. 2 at entries for 10/23/07, 11/14/07, 1/11/08, 1/30/08, 5/5/08, 5/22/08, 7/14/08, 9/8/08, 10/21/08, 12/10/08, 1/7/09). Moreover, given the simplicity of the underlying, and frequently litigated, claims suggested by the allegations of fact in the case -- false arrest, malicious prosecution and excessive force -- there was no compelling need for a reasonably experienced attorney to engage in extended consultations with multiple attorneys about the drafting of the pleading or other issues. There is still less reason for both attorneys to spend time on a field trip to visit the location of the arrest. (Rothman Decl., Ex. 4 at second page, entry for

15

10/6/08; Rankin Decl., Ex. 2 at p. 3, entry for 10/6/08). One lawyer (or even an investigator) with a camera should do. Finally, and more generally, there are numerous entries in both trial attorneys' time records reflecting communications between them ranging from the mundane to the consequential and double-billing for client conferences and court appearances. (See, e.g., Rothman Decl., Ex. 4 at entries for 1/25/08, 2/4/08, 2/7/08, 5/5/08, 5/16/08, 5/21/08, 5/22/08, 9/8/08, 10/31/08, 11/21/08, 2/17/09; Rankin Decl., Ex. 2 at entries for 1/11/08, 1/30/08, 5/5/08, 5/19/08, 5/22/08, 11/21/08, 1/7/09, 1/8/09, 2/17/09, Ex. 3 at entries for 4/10/09, 4/30/09). While repeated communications between multiple attorneys who are representing the same client are to be expected, this was not a case that required double staffing and hence much time was unreasonably generated by this staffing decision.

In addition, a number of time entries, particularly by Mr. Rankin, lack specificity. (E.g., Rankin Decl., Ex. 2 at entries for 11/6/07, 11/15/07, 10/21/08, 1/7/09; Rothman Decl., Ex. 4 at entries for 1/25/08, 6/24/08, 9/8/08, 1/3/09 to 1/4/09). This is a serious failing since fee applications must be accompanied by contemporaneous time records, see, e.g., Scott v. City of New York, 2009 WL 2610747, *1 & n. 11 (S.D.N.Y. Aug. 25, 2009); Morin v.

16

<u>Modern Cont'l Constr. Co.</u>, 2009 WL 2551802, *4 (E.D.N.Y. Aug. 17, 2009), which must adequately "identify the general subject matter" of the work that the attorney did during each time slot. <u>Hensley</u>, 461 U.S. at 437 n.12. This requirement is generally not satisfied by vague entries such as "conference with" or "call to" a specified person. <u>Connecticut Hosp. Ass'n v. O'Neill</u>, 891 F. Supp. 687, 690-91 (D. Conn. 1994) (citing <u>inter alia</u> <u>Hensley</u>, 461 U.S. at 437; <u>Grogg v. Gen. Motors Corp.</u>, 612 F. Supp. 1375, 1380 (S.D.N.Y. 1985)), although the court may be able to deduce the nature and relevance of a generally described time entry based on its familiarity with the case or other contextual clues. <u>See</u>, <u>e.g.</u>, <u>Raniola</u>, 2003 WL 1907865, at *4 (citing cases). Plainly inadequate, however, are time entries that refer to unspecified communications with unidentified "outside counsel" or "colleagues". (<u>E.g.</u>, Rankin Decl., Ex. 2 at entries for 12/10/08, 1/7/09; Rothman Decl., Ex. 4 at entry for 1/3/09 to 1/4/09).

A further problem is found in a number of entries that reflect attorneys performing work that can be done by a clerical person or at most a paralegal. This includes such work as the copying and mailing of pleadings or other documents (Rankin Decl., Ex. 2 at entries for 1/30/08, 5/21/08, 5/22/08, 7/28/08, 9/10/08), the Bates-stamping of documents (<u>id.</u>, Ex. 2 at entry for 9/10/08), the

17

filing of papers (Rothman Decl., Ex. 4 at entry for 6/25/08), and the service of pleadings. (Id., Ex. 4 at entries for 6/21/08, 6/24/08).[6] The plaintiff's application seeks to charge full attorney rates for these services, a demand that is indefensible.[7]

These observations compel a significant reduction in the time for which compensation should be awarded. In so concluding, we

---

[6] Mr. Rothman chose to serve process, assertedly so that he could see the inside of the police precinct where plaintiff was brought. (Rothman Supplemental Decl. at ¶ 8). Whatever the unexplained relevance of the appearance of the front room of the precinct, this explanation does not justify charging defendant for the clerical work of serving process.

[7] At one point plaintiff seeks to justify this practice by asserting that the attorneys are sole practitioners, implying that they lack such non-attorney personnel. (Pl.'s Mem. of Law in Supp. of Mot. for Att'ys' Fees and Other Discretionary Costs, 8 & n.6 (citing cases)). Putting to one side the fact that many of the menial tasks in question could be accomplished by services for hire, the underlying factual assertion is demonstrably false since Mr. Rankin bills time for tasks performed by Ms. Wong, who plainly is not an attorney. In any event, even if the lawyer chooses to do these tasks rather than to pay for someone else to do so, there is no basis in this circuit's precedent for requiring the other side to pay him at attorney rates, which simply rewards his inefficiency. See Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) (refusing to award attorney at small firm fee, even at paralegal rate, for purely clerical work); Simmons v. New York City Transit Auth., 2008 WL 2795138, *2 (E.D.N.Y. July 17, 2008) (reducing attorney's rate to paralegal rate for fee award covering time spent reading and reorganizing another attorney's comments for preparation of response to motion); Staples, Inc. v. W.J.R. Assocs., 2007 WL 2572175, *8 (E.D.N.Y. Sept. 4, 2007) (reducing attorney's rate to paralegal rate for award for hours spent assembling, copying and collating motion papers).

nonetheless reject so much of defendant's argument as consists of raw and unconvincing speculation about the reasons for certain entries, all in support of the assertion that opposing counsel -- particularly Mr. Rankin -- are so ignorant and incompetent as to amount to a lawyer's version of the village idiot. (E.g., Def. City's Mem. of Law in Opp'n to Pl.'s Application for Att'ys' Fees, 7, 11-12, 16-17). Such ad hominem attacks -- which plaintiff's counsel finally and inappropriately replicates (Reply Mem. of Law in Supp. of Mot. for Att'ys' Fees and Other Discretionary Costs, 3 n.1) -- are founded more on bile than on determinable facts, are of no help to the court and have no place in motion papers of this sort.[8]

All of that said, in exercising our discretion in adjusting the hours claimed by counsel we recognize that we are engaged in what is inevitably a somewhat arbitrary process based on after-the-fact judgments about attorney efficiency. Nonetheless, to adjust

---

[8] We also note the extended argument on both sides as to the significance of Mr. Rothman's examination of two witnesses at a trial in an unrelated case held before Judge Sweet. (Zuckerman Decl. at ¶ 5; Rothman Supplemental Decl. at ¶ 5). The extent of Mr. Rothman's role at that trial  -- and notably the competence and originality of his witness questioning -- is barely, if at all, relevant to his competence in pretrial matters and offers little guidance as to the hourly rate that he may justifiably seek here.

19

for unnecessary or inefficient work, we conclude that the time claimed by Mr. Rothman should be reduced by one-third and that documented by Mr. Rankin should be reduced by fifty percent.

We next consider two separate issues raised by defendant, who argues that two sets of attorney activities should be excluded from compensation. The first concerns whether the time spent by counsel on the statutory notice of claim -- including both the application for leave to file out of time and the section 50-h hearing -- is compensable. Defendant's argument to the contrary is based on the contention that the statutory fee award is premised on plaintiff having prevailed only on his federal claims, thus assertedly rendering the notice-of-claim process irrelevant since it is designed to preserve only the plaintiff's state-law claims. (Def.'s Mem. at 18-19). We think that both the appropriate framework for and outcome of that analysis are more complex than defendant suggests.

Defendant is correct in noting that the offer of judgment specified that the entry of judgment for plaintiff would be on the federal claims, and that accordingly the fee award must be premised on the plaintiff's success on those claims. (Zuckerman Decl. Ex. C). The question of whether he may be awarded fees for his

20

attorneys' work in preparing the procedural ground for asserting his state-law claims in federal court thus turns on whether that effort was sufficiently related to the success (such as it was) that plaintiff achieved on the federal claims to justify compensation. We conclude that it was.

As a general matter, if a plaintiff prevails on a claim that generates a fee award, he may recover for work done on other claims if they were substantially related to the claim on which he prevailed. See generally Quaratino v. Tiffany & Co., 166 F.3d 422, 425, 427 (2d Cir. 1999); U.S. Football League v. N.F.L., 887 F.2d 408, 414 (2d Cir. 1989).[9] The state-law claims in this case were based on the same events as gave rise to the federal claims. Moreover, the assertion of the state-law claims in this suit can fairly be viewed as a reasonable strategy by counsel for maximizing the likelihood of a successful outcome in two related respects. First, some of the state common-law claims impose a potentially less demanding standard on the plaintiff, and therefore might give him a greater likelihood of achieving success even if he could not

---

[9] To the extent that administrative proceedings are a prerequisite for assertion of a claim in court, the time spent in such proceedings may be compensable. See, e.g., New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 65-66 (1980); Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 282-83 (2d Cir. 1987).

prevail on the federal claims. Compare Singer v. Fulton County
Sheriff, 63 F.3d 110, 116 (2d Cir. 1995) (plaintiff asserting
section 1983 malicious prosecution claim must show deprivation of
liberty) with Colon v. City of New York, 60 N.Y.2d 78, 82, 468
N.Y.S.2d 453, 455 (1983) (elements of malicious-prosecution claim
under New York law do not include deprivation of liberty). Second,
and more crucially, that very fact means that inclusion of those
claims in the complaint potentially increased plaintiff's
bargaining leverage in seeking to resolve the entire suit, even if
-- as occurred here -- on the basis of a settlement designated as
being predicated on the federal claims.

In short, we view the work done in state court and at the 50-h
hearing to preserve plaintiff's state-law claims as reasonably
calculated to improve the prospects for his federal claims, at
least by way of a future settlement. That finding in itself
suffices to justify awarding plaintiff reasonable fees for that
effort. Cf. Bridges v. Eastman Kodak Co., 102 F.3d 56, 59-60 (2d
Cir. 1996); Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d
510, 521-22 (S.D.N.Y. 2002) (citing cases).

The other exclusion that defendant seeks from a fee award is
for time spent on the fee application. (Def.'s Mem. at 19-20). This

is unpersuasive. Time devoted to a fee application is generally compensable, see, e.g., Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgt. Dist., 71 F.3d 1053, 1059-60 (2d Cir. 1995); Gagne v. Maher, 594 F.2d 336, 343-44 (2d Cir. 1979), aff'd, 448 U.S. 122 (1980), and in this case there is no reason to disallow it. Plaintiff's counsel sought to resolve the issue by negotiation, a process that, while unsuccessful, did not fail because of any bad-faith or unreasonable conduct by plaintiff's attorneys. Accordingly, plaintiff is entitled to reasonable compensation for fees generated by the current motion.

We next turn to the question of appropriate hourly rates. As noted, Mr. Rothman (an attorney in practice since 2001 (Rothman Decl. at ¶ 2)) seeks $325.00 for 2007 and 2008 and $400.00 for 2009. Mr. Rankin (practicing since 2005 (Rankin Decl. at ¶ 8)) asks for $325.00 for all of his time, as well as $250.00 per hour for the brief task undertaken by Mr. Taylor. They proffer in support of their respective requests the declarations of four New York attorneys in private practice, who all aver that these rates are reasonable reflections of the current market for attorneys of counsel's experience and caliber. (Rothman Decl., Ex. 1 at ¶ 7 (Decl. of Ronald L. Kuby, Esq.), Ex. 2 at ¶ 15 (Decl. of James I. Meyerson, Esq.), Ex. 3 at ¶ 7 (Decl. of Martin R. Stolar, Esq.);

Rankin Decl., Ex. 4 at ¶ 6 (Decl. of Rose M. Weber, Esq.)). Defendant in turn argues that these rates are entirely unjustified in view of the level of experience of the attorneys and their general performance in the case. (Def.'s Mem. at 7-9).

The hourly-rate analysis described by the Second Circuit in Arbor Hill -- insofar as it looks to what a fee-paying litigant would be willing to pay an attorney absent a statutory fee provision -- "does not provide a particularly clear analytical path" for this purpose, Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC, 2009 WL 466136, *4 (S.D.N.Y. Feb. 25, 2009), and presents an especially serious quandary in this type of small-damage case. As we observed elsewhere, "[w]hat a reasonable but parsimonious client would be willing to pay for effective advocacy is not self-evident in any case; after all, the inquiry requires an excursion into the subjective state of a hypothetical person or organization." Id. In a case such as this -- in which a well-informed plaintiff would have to assume that a successful outcome would, at best, yield only modest rewards -- the narrow question posed by Arbor Hill, if literally construed, would dictate at best a paradoxical, and seemingly implausible, answer.

If, for example, a potential fee-paying litigant in the

24

Southern District of New York anticipated that his most favorable likely outcome in an entirely merited civil-rights lawsuit would yield an award of, say, $15,000.00, but that it would require perhaps 100 hours of attorney time to litigate the case to final verdict, he would presumably decline to sue at all. His best-case scenario would require him to find an attorney who would charge less than $150.00 per hour (costs included) merely to break even if he realized his best-case result (and significantly less to account for the risk of an adverse outcome of the litigation), and in New York finding a competent and experienced attorney (other than on a pro bono basis) willing to litigate such a case on such terms is at least doubtful.

Such an outcome suggests that the Arbor Hill focus on the paying-client model here would, if literally applied, dictate an award of no fees, since the hypothetical rational potential litigant would almost certainly not sue and hence would pay nothing to an attorney. This result, however, would be entirely inconsistent with the policy embodied in section 1988 and similar fee statutes, which are designed to encourage attorneys to represent plaintiffs in potentially meritorious cases even if the case is either risky or likely to result in a modest damage award. Hensley, 461 U.S. at 429-30 & n.4; Quaratino, 166 F.3d at 426; Time

<u>Warner Cable-Rochester v. City of Rochester</u>, 342 F. Supp. 2d 143, 144-46 (W.D.N.Y. 2004).[10]

     The other complexity posed by the <u>Arbor Hill</u> analysis is found in its emphasis on the <u>Johnson</u> factors as a measure for determining a reasonable fee rate. As the reader will note, a number of the twelve <u>Johnson</u> considerations do not seem to address the rate question, but rather focus on the appropriate size of the award, and most do not shed much light on the question of a reasonable litigant's inclination to pay a specified hourly fee in any

---

     [10] An alternative, if unsatisfactory, approach to the <u>Arbor Hill</u> analysis would be to say that even if a hypothetical paying plaintiff could likely not find an attorney to work for such a low rate of pay, the real-life section 1983 plaintiff's lawyer should get no more than what the paying client would be willing to pay (in our example presumably much less than $150.00 an hour). But this result appears inconsistent with the <u>Arbor Hill</u> market-based analysis, which seems to look to a market with both buyers and sellers of legal services, <u>see</u>, <u>e.g.</u>, <u>Arbor Hill</u>, 522 F.3d at 190; <u>Arbor Hill Concerned Citizens v. County of Albany</u>, 493 F.3d 110, 117-18 (2d Cir. 2007)(referring to hypothesized negotiations between client and attorney), and -- more importantly -- it would seem to undercut the goal of the fee statutes to encourage attorneys to represent rights victims even in small cases, because it would generate fees so low that they would attract only lawyers willing, in effect, to appear <u>pro</u> <u>bono</u> or to accept being vastly undercompensated. Moreover, such a reading would be inconsistent with settled case law that the setting of statutory fees does not require proportionality between the plaintiff's recovery and the amount of the fee award. <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 574 (1986); <u>Quaratino</u>, 166 F.3d at 426; <u>Cowan v. Prudential Ins. Co. of Am.</u>, 935 F.2d 522, 524-28 (2d Cir. 1991).

circumstances. Moreover, to the extent that these factors focus on such concerns as the riskiness of the litigation, they are in some tension with the market-analysis model as also espoused by <u>Arbor Hill</u>.[11]

All of this said, we believe that the potentially conflicting tendencies of the <u>Arbor Hill</u> analysis can be reconciled even in a case such as this. We interpret <u>Arbor Hill</u>'s reference to a paying-client analysis as only a guide to the court's exercise of its acknowledged discretion, which is also to be influenced by the pertinent <u>Johnson</u> criteria. Moreover, we view the market analysis as applicable principally to cases in which the potential favorable outcome is sufficiently substantial to permit a litigant to make a rational decision to pursue the litigation even if he must pay for his lawyer.[12]

In determining a set of fee rates in this case, we note that

---

[11] In the cited example, the implication from <u>Johnson</u> is that the riskiness of the lawsuit is a factor that weighs in favor of a higher fee, so as to induce attorneys to take such challenging cases, whereas a paying client would presumably be inclined to seek a lower fee if the outlook for the case is at best chancy.

[12] We offer this reading of the <u>Arbor Hill</u> decisions in order to align it more closely with the evident statutory intent embodied in section 1988.

we have some experience with the market for lawyers who have experience in this type of small constitutional litigation and who work in single practice or small firms. Moreover, the attorney declarations proffered by plaintiff provide some additional, if fairly conclusory, information about that market.

As for the <u>Johnson</u> analysis, plaintiff offers some information pertinent to the cited factors. Insofar as relevant and reflected in the record, these factors do not point decisively towards any specific figure but do tend to counsel modesty. We know the "time and labor" reportedly spent in this case and the amount of time that was reasonably necessary to achieve the resultant settlement terms. We have observed that the issues in the case lacked "novelty and difficulty", and that the "level of skill" required of counsel was correspondingly less than exalted. We are told that Mr. Rothman's requested rates are consistent with the rates that he charged paying clients during the relevant time period (Rothman Decl. at ¶¶ 25, 27 & Ex. 1 at ¶ 8 (Kuby Decl.))[13], and we understand that the attorneys' fee arrangement with plaintiff was undoubtedly contingent in nature. (<u>See</u> <u>id.</u> at ¶ 8). We also note the degree of success of the plaintiff on his claim, which was predictably quite

---

[13] We find no equivalent representation for Mr. Rankin.

28

modest. See Arbor Hill, 522 F.3d at 186-87 n.3. We have no information suggesting that any time limitations were placed on plaintiff's counsel or that they gave up any opportunity for other work by virtue of their involvement in this case. Id. We are aware of the attorneys' work experience, which reflects their participation in a number of civil rights lawsuits and some criminal trials over the relatively short period of their post-law-school careers. (E.g., Rothman Decl. at ¶¶ 2, 4-7; Rankin Decl. at ¶¶ 5-7, 9-13 & Ex. 1). As to the remaining Johnson criteria, there is no suggestion that the attorneys had a pre-existing relationship with plaintiff. Finally, contrary to plaintiff, we view do not view this case, though small in scope, as notably "undesirable" from the perspective of an attorney. (See Pl.'s Mem. at 9; Rothman Decl. at ¶¶ 21-22). Although the facts made the outcome at the least uncertain for plaintiff, there were several countervailing considerations, notably (1) the applicability of the statutory-fee provision, (2) the likelihood that the case would not require a great deal of work, and (3) the frequency with which cases of this sort end up settling after a limited investment of time by counsel.

Under all of the circumstances, we recommend an hourly rate for Mr. Rothman of $325.00 per hour for 2007 and 2008, and suggest that his rate be increased to $350.00 per hour for 2009, reflecting

his level of experience and the circumstances of his practice. <u>See</u> <u>e.g.</u>, <u>Rozell v. Ross-Holst</u>, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008); <u>Barfield v. New York City Health & Hosps. Corp.</u>, 2006 WL 2356152, *1 (S.D.N.Y. Aug. 11, 2006), <u>aff'd</u>, 537 F.3d 132 (2d Cir. 2008). As for Mr. Rankin, we recommend that he be compensated at the rate of $275.00 per hour. This figure reflects the facts (1) that he did most of his work in this case while he was two and three years out of law school, though he had more hands-on experience by that time than the typical big-firm associate with equal seniority, and (2) that he was working as a single practitioner, with presumably a lower overhead. It also reflects his apparent need for much outside assistance in a case that should not have required it, perhaps a result of his limited experience.

Based on these adjustments we arrive at the following recommended awards:

| | Compensable Hours | Rate | Fee |
|---|---|---|---|
| Mr. Rothman (2007-08) | 25.0 | $325.00 | $8,125.00 |
| (2009) | 19.7 | $350.00 | $6,895.00 |
| Mr. Rankin | 21.1 | $275.00 | $5,802.50 |
| Mr. Taylor | 1.2 | $250.00 | $ 300.00 |
| Ms. Wong | 2.7 | $100.00 | $ 270.00 |
| TOTAL | 69.7 | | $21,392.50[14] |

We of course acknowledge that this figure is far larger than plaintiff's award, but that is principally a result of the inevitable need to spend more than a few hours of attorney time in competently litigating this case. We also note that some of the excess time is attributable to the failure of settlement efforts on the fee question, efforts that did not reflect any unreasonableness on the part of plaintiff's counsel.

_____

[14] We view defendant's assertion that counsel should be awarded only $5,000.00 for their work in this case, inclusive of expenses, as entirely unjustified; indeed, other than specifying a number of questionable time entries (totaling perhaps 50 hours in attorney time), defendant's counsel does not attempt to justify the specific figure other than by ad hominem attacks.

As for plaintiff's claimed expenses, defendant does not challenge any of the items or the amounts. Accordingly, those expenses, totaling $849.03, should awarded.

CONCLUSION

For the reasons stated, we recommend that plaintiff's application for an award of attorney's fees be granted to the extent of awarding him $21,392.50 in fees and $849.03 in expenses, or a total of $22,241.53.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. See also Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Victor Marrero, Room 660, and to the chambers of the undersigned, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989);

Thomas v. Arn, 474 U.S. 140, 150-55 (1985), reh'g denied, 474 U.S.
1111 (1986).

Dated: New York, New York
       March 9, 2010

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been mailed
today to:

Jeffrey A. Rothman, Esq.
315 Broadway
Suite 200
New York, New York 10007

David A. Rankin, Esq.
350 Broadway
Suite 700
New York, New York 10013

Mark D. Zuckerman, Esq.
Assistant Corporation Counsel
 for the City of New York
100 Broadway
New York, New York 10007

33